STATE ex rel. McDILL vs. THE BOARD OF STATE CANVASS-ERS AND THE SECRETARY OF STATE.

MANDAMUS: ELECTION OF REPRESENTATIVE IN CONGRESS: CANVASS OF VOTES: CERTIFICATE OF ELECTION. (1, 2) *Power of court, by mandamus, over state canvassers.* (3-6) *Power and duty of state canvassers in respect to returns.* (7, 8) *Power and duty of county canvassers.* (9) *Power and duty of secretary of state.*

1. In a proper case, this court will require the board of state canvassers to determine in accordance with law which one of the candidates at an election in this state for the office of representative in the congress of the United States is entitled to their certificate of election.

2. In such a case the power of determining the *right to the office* is vested by the constitution of the United States (art. I, sec. 5) exclusively in the house of representatives itself; and this court, therefore, cannot go behind the returns and investigate frauds and mistakes, and adjudge which candidate was elected; but it can determine whether the return made to the state board of the votes cast in any county for such office should be included by the state board in their canvass and statement of the votes cast for said office.

3. The state canvassers can only act upon the certified statements of the county canvassers, returned by the several county clerks to the secretary of state, and have no authority to procure corrected returns, or to go behind the returns thus made, or receive testimony *aliunde*, either to sustain or to invalidate them. R. S., ch. 7, sec. 80.

4. Where the statement of the county canvassers, returned by the county clerk, of votes cast in any county for the office of representative in the congress of the United States, is *void upon its face*, it should be rejected by the state canvassers in making their canvass and statement of the votes cast for such office; but if it be upon its face such as the law requires, it must be included by them in such canvass and statement, however false and fraudulent it may be in fact.

5. It is the law of this state, settled by the decision in *Bashford v. Barstow*, (4 Wis., 567), which is here re-affirmed, that when a board of county canvassers include in their statement of the votes cast in their county for any office (as such statement is returned to the state canvassers) any *tabulated statement* of the votes, by towns and wards or other election precincts, such tabular statement is *no part of the return required by law*, and cannot be resorted to to contradict the return itself.

6. By a return of the county canvassers of Wood county, made to the state canvassers within the time prescribed by law, they "certify that the foregoing and within tabular statement is correct and true, as compiled from the original returns made to the county clerk of said county, and as compared therewith by us; and that from said returns it appears that at the general election held in the several towns, wards and election precincts thereof, on Tuesday, the 3d day of November, 1874, the whole number of votes polled in said county for representative in congress from the eighth congressional district was eleven hundred and twelve (1,112), of which number Geo. W. Cate received six hundred and fifty-five (655), and A. S. McDill received four hundred and fifty-seven (457)." On the back of the return there is a tabular statement of the votes cast in each of the several towns and wards in said county for representative in congress, indicated by figures placed opposite the name of each town or ward, except the first ward in the city of Grand Rapids and the town of Lincoln, opposite each of which is written the following words: "Illegal and defective returns, thrown out." It is alleged by the relator, and not denied by the respondents, that in such ward and town the relator received ninety-six (96), and Geo. W. Cate fifty-six (56) votes. *Held*, that, rejecting the tabular statement as no part thereof, the return is valid and sufficient on its face, and the votes returned therein should be counted by the state canvassers.

7. The statute requires the county board of canvassers to meet not later than the Tuesday next after that on which a general election is held; and it provides that "if, in the canvass of votes, any returns shall be found to be so informal or incomplete that the board cannot canvass them, they may dispatch a messenger to the inspectors who made the

returns, commanding them to complete the returns in the manner specified by law, and such corrected returns shall forthwith be returned to the canvassers," etc. *Held*, that the word "may," as used in this section, means "must;" and if the county canvassers of Wood county, at their meeting of Tuesday, November 10, 1874, found the returns from the town of Lincoln and the first ward of the city of Grand Rapids so informal or incomplete that they could not canvass them, *it was their duty* to adopt the means specified in the statute for obtaining correct returns.

8. The record does not show what were the alleged irregularities or defects for which the county canvassers threw out the votes cast in the rejected town and ward. There is nothing tending to show that they made any effort to procure corrected returns, or adjourned for that purpose, as the statute provides. *Held*, that if the tabular statement above described were any part of the return required by law, this court would be inclined to think that the whole return should be rejected, as showing an utter neglect of duty on the part of the county canvassers, and an illegal and wanton disfranchisement of the electors who voted in the rejected town and ward.

9. The secretary of state, after receiving the return above described (filed in his office November 14), was not bound, nor had he authority, to send to Wood county for another return; nor could any defect in the canvass in said county have been cured by another canvass, made after the time fixed by law (which expired on the 12th of November); the state board being prohibited by law from considering any statement or return made by the county canvassers after that time.

APPLICATION for a *Mandamus*.

On the affidavit and motion of the relator, this court, on the 4th of December, 1874, granted an alternative writ of *mandamus*, directed to the board of state canvassers and the secretary of state, commanding said board to determine upon the election returns from the several counties in the eighth congressional district in this state then before said board, that the relator, at the last previous general election in this state, had been, by the greatest number of votes, duly elected to the office of representative in congress from said district, and to make such a statement of said votes duly and legally returned from said district as would show that the relator had been so elected to said office, and to subscribe on such statement a cer-

tificate of such determination, and deliver the same to the secretary of state, to be recorded in his office; and also commanding the secretary of state, thereupon without delay, to make out and transmit to the relator a certificate of his said election, certified by him under his seal of office, and to prepare a certificate under the great seal of the state, attested by him as secretary of state, and addressed to the house of representatives of the United States, of the due election of the relator; or to show cause, etc.

The substance of the return made to the alternative writ is sufficiently stated in the opinion. The relator demurred to the return.

*Harlow S. Orton*, for the demurrer. [No brief on file.]

*S. U. Pinney*, contra, contended, 1. That in the case of the Wood county return, the tabular statement annexed thereto was no part of the legal return, and was not evidence before the canvassers of any fact (*Attorney General v. Barstow*, 4 Wis., 567); and that, rejecting such statement, the return was valid and sufficient. 2. That while county canvassers cannot decide upon the legality of an election or the validity of the votes cast, and reject returns, yet their powers are so far judicial that they may and of necessity must judge whether returns transmitted to them are official in their character or so certified and authenticated that they are authorized to receive and allow them. *Luce v. Mayhew*, 13 Gray, 83; *State ex rel. Rice v. County Judge*, 7 Iowa, 199; *People v. Hilliard*, 29 Ill., 422; *People v. Head*, 25 id., 328; *Strong, Petitioner, etc.*, 20 Pick., 492. If we concede that there is any evidence that the returns from the town of Lincoln and the first ward of Grand Rapids were rejected, the court must assume that they were properly rejected, *i. e.*, that they were not such official returns as could lawfully be considered. It will not be presumed that the county canvassers acted illegally. 3. What the duties of the county canvassers may have been, and whether they performed those duties or not, is a matter of no concern to the state canvassers.

If the statement sent to the secretary of state is in due form, the state canvassers cannot choose but receive and act upon it. The county canvassers may send for delinquent returns, and may require informal or incomplete town or ward returns to be corrected (Tay. Stats., 230, § 89; *State ex rel. Burnett v. Pierpont*, 29 Wis., 608); but the state canvassers have no such power. Neither the secretary of state nor the state canvassers have power to convene the county canvassers and cause them to make a new statement; the county canvassers have no power to reassemble and make a new statement (*Att'y Gen'l v. Barstow*, *supra*); and if they were to make such a return, it could not be considered. R. S., ch. 7, sec. 113. Neither had the secretary of state or the state canvassers any power to consider and act upon the original returns from the town of Lincoln and the first ward of Grand Rapids, if they had gotten possession of them. Their action must be based upon the regularly certified returns of the county canvassers, and upon those alone. R. S., ch. 7, secs. 113, 114; *Att'y Gen'l v. Barstow*.

LYON, J. Pursuant to the provisions of the statute in that behalf (R. S., ch. 7, sec. 79), the secretary of state appointed a meeting of the state canvassers, to be held on the 3d day of December, instant, to canvass the votes cast for representatives in congress at the late general election. The board met at the office of the secretary at the time thus designated, made the canvass, and orally announced their determination therefrom that Geo. W. Cate had received the greatest number of votes cast at such election for representative in congress from the eighth congressional district, and was duly elected to that office. The relator appeared by counsel before the board, and claimed that he had received the greatest number of votes for such office, and that the board should so determine. His counsel also notified the board, informally, that the relator would immediately apply to this court for a writ of *mandamus* commanding the board to determine and certify that he was duly

State ex rel. McDill vs. The State Canvassers and the Secretary of State.

elected to such office.   On the following day such application was made to this court, and an alternative writ of *mandamus* was awarded.   By consent of all parties, the writ was made returnable on the 5th inst., on which day the respondents filed their return thereto.   On the same day, the relator filed a general demurrer to such return, and the same was argued by the respective counsel.   It is averred in the relation and admitted in the return to the alternative writ, that the whole number of votes cast at such election in the several counties composing the eighth congressional district, for representative in congress (excluding the county of Wood), was 17,978, of which votes the relator received 9,087, and Judge Cate 8,891.   It also appeared that the board of state canvassers had before it a return made by the county clerk of Wood county to the secretary of state, which consisted of a certified copy of a statement made by the board of county canvassers, of the votes for representative in congress given in that county at such election   From that statement it appears that the whole number of such votes was 1,112, of which number the relator received 457, and Judge Cate 655.   So if the return from Wood county be included in the canvass, Judge Cate has 9,546 votes, and the relator has 9,544 votes, which elects the former by a majority of two votes. The relator claims that the return from Wood county is void on its face, and that it is the duty of the board of state canvassers to reject it entirely, and to determine that he was duly elected to such office.

The return to the alternative writ of *mandamus* contains a copy of such return from Wood county, and discloses the precise grounds upon which it is claimed that the latter return is void.   The statement of the board of county canvassers (a copy of which, duly certified by the county clerk, is the return under consideration) is as follows:

"*State of Wisconsin, County of Wood, ss:*   We, C. O. Baker, county clerk, and William Roche, county supervisor, and H. A. Clark, county supervisor, in and for said county, constitut-

ing a county board of canvassers .herefor, do hereby certify that the foregoing and within tabular statement is correct and true, as compiled from the original returns made to the county clerk of said county, and as compared therewith by us; and that from said returns it appears that at the general election held in the several towns, wards and election precincts thereof, on Tuesday, the 3d day of November, 1874, the whole number of votes polled in said county for representative in congress from the eighth congressional district was eleven hundred and twelve (1,112), of which number Geo. W. Cate received six hundred and fifty-five (655) and A. S. McDill received four hundred and fifty-seven (457)." On the back of such return there is a tabular statement of the votes cast in each of the several towns and wards in the county for representative in congress, indicated by figures placed opposite the name of the town or ward, except the first ward in the city of Grand Rapids and the town of Lincoln, opposite each of which is written the following words: "Illegal and defective returns, thrown out." This statement bears date November 10, 1874, which was the Tuesday next after the election.

The relation further alleges (and such allegation is not denied in the return to the writ) that in such rejected ward and town the relator received at such election 96 votes, and Judge Cate 56 votes, for representative in congress; and that returns of such votes were properly and duly made to the county canvassers.

From the foregoing statement of the case, it is apparent that the question to be determined is, whether the return of the votes cast in Wood county for representative in congress is void on its face. If so void, the board of state canvassers should reject the vote of that county from the canvass, and should determine that the relator was duly elected to such office. In such case, the return to the alternative writ fails to show cause why a peremptory *mandamus*, as prayed for in the relation, should not issue, and the demurrer thereto should be sustained.

We cannot determine the right to the office, but only the duty of the board of state canvassers in respect to the canvass. The power to determine the right is, by the constitution of the United States, vested exclusivaly in the house of representatives. Art. I, sec. 5. Hence we cannot go behind the returns and investigate and correct frauds and mistakes, and adjudge which of the candidates was elected, but can only determine whether the board of state canvassers ought to include in its canvass and statement of the votes cast for representative in congress those returned from Wood county. This proposition is not controverted.

Neither is it claimed that the board may receive testimony *aliunde* the returns before them, to sustain or invalidate such returns. These must stand or fall by what appears in them. Hence, if the return from Wood county is, on its face, what the law requires it to be, however fraudulent or false it may be in fact, it must be received, and the votes returned therein must be included in the canvass. In such case the board has no authority to reject the return. The question, therefore, is, whether the return from Wood county is valid on its face; or (stated in another form), does the statement of the canvass of the votes, and the result of the election made by the board of canvassers of that county and certified to the secretary of state, show on its face a compliance with the law on that behalf?

If the tabular statement of the votes by towns and wards, made by the canvassers and included in the return from Wood county to the secretary of state, is a part of the return required by law, we are strongly inclined to think that the whole return should be rejected.

The record before us does not inform us what were the alleged illegalities and defects for which the board of county canvassers threw out the votes cast in the rejected town and ward. But whatever they were, the statute pointed out the duty of that board in unmistakable terms. " If in the canvass of votes any returns shall be found to be so informal or incom-

State ex rel. McDill vs. The State Canvassers and the Secretary of State.

plete that the board cannot canvass them, they may dispatch a messenger to the inspectors who made the returns, commanding them to complete the returns in the manner specified by law; and such corrected returns shall forthwith be returned to the canvassers for their further action; and for the reception of such returns the board may adjourn for a time not exceeding two days." Tay. Stats., 230, § 89.

It is not necessary that a person should be a lawyer in order to know that the word "may," as first used in the statute above quoted, means "must." Any one would so read it who has sufficient intelligence to comprehend that the preservation of our system of free government is impossible unless the will of the people, lawfully expressed through the ballot box, is respected and obeyed. See *State ex rel. Burnett v. Pierpont*, 29 Wis., 608.

There is nothing in the statement of the board of county canvassers showing or tending to show, neither was it claimed on the argument of the demurrer, that any effort was made to procure corrected returns from the rejected town and ward. On the contrary, the silence of their statement on that subject, the suppression of the nature of the alleged defects in such returns, for which they were rejected, and the fact that it does not appear that the board availed itself of the power given by law to adjourn for the purpose of procuring corrected returns, leaves upon our minds a most painful impression that the county canvassers utterly neglected their duty in this respect, and illegally and wantonly disfranchised all of the electors who voted at such election in the rejected town and ward.

If they did so, they committed a most serious offense, an offense which strikes at the very foundations of our system of government, and which cannot be too severely censured. Hence it was that we felt justified in saying, during the argument of the demurrer, that he who, by fraud or by willful disregard of his sworn duty, defeats the will of the people as expressed by their votes, commits a political crime next to trea-

son and nearly akin to it, and that this court will never fail, on any proper occasion, to characterize such an offense in fitting terms.

But whether a return which shows upon its face that it does not include all of the votes cast in the county from which it is made, but that a portion of the voters have been illegally disfranchised by the county canvassers, should be rejected or not, we think it is the settled law of this state that the tabular statement before mentioned is no part of the return from Wood county, and cannot be resorted to, to contradict the return itself. This was expressly held in *Attorney General v. Barstow*, 4 Wis., 567. In that case the statement of the county board of canvassers of Outagamie county, returned to the secretary of state, was before the court. We have examined the original return, and find that the statement is substantially in the same form as the statement made by the Wood county canvassers, with similar tabular statements contained therein. The law then in force, prescribing the form of such returns, has not been materially changed, but still remains the law of the state. Such tabular statement showed that Bashford, the relator, received but 414 votes in that county, while the statement proper of the county canvassers was that he received 464 votes. It is understood that the board of state canvassers followed the tabular statement, and only allowed him 414 votes. In correcting the errors in the state canvass, the court rejected such tabular statement entirely, and allowed the relator the full number of 464 votes. On this subject, Chief Justice WHITON, who delivered the opinion of the court, said : " We are also of opinion, that the additions which the state canvassers made to, and the deductions made from, the votes mentioned in the statements of votes made by the county canvassers, for the reason that such statements did not correspond with the tabular statements of the vote of the several towns, were wholly unauthorized, *because the tabular statements were not authorized by law, and of course could not be evidence of the facts stated in them.*" p. 801.

That decision, made, as it was, in a case of great public concern, and after the most mature deliberation by the court, we cannot overrule or disturb. Its influence in preserving the purity of the ballot box cannot well be overestimated. Its teaching is, that the will of the people, expressed in accordance with the forms of law, must be respected and must prevail. That it is sound in principle we cannot doubt. The authority of a decision so valuable in its results, so long acquiesced in, so fully approved (as we believe) by the bar and people of the state, and so manifestly correct, should not and must not be shaken.

The learned counsel for the relator, in his very able argument in support of the demurrer, endeavored to draw a distinction between that case and the present one. But it seems very clear to us that the principle of the two cases is the same, and that we cannot sustain the demurrer to the return of the state canvassers, without overruling the former decision in respect to such tabular statements.

We must hold, therefore, that the tabular statement contained in the election return from Wood county (and which alone discloses the alleged infirmity in such return) was not authorized by law, and cannot be received as evidence of any fact stated therein.

Excluding such tabular statement, the return is in all respects in the form prescribed by the statute (R. S., ch. 7, sec. 58); and the board of state canvassers cannot go behind it, but must receive it, and include the votes returned therein, in their canvass and statement of the result of the election in the eighth congressional district for representative in congress.

It follows that the secretary of state properly refused to send a special messenger to Wood county for a statement of the result of the election in that county, as requested by the relator before the time appointed for the meeting of the state canvassers. The secretary has no authority to send for such statements, except in cases where none have been received by him. Hav-

ing received such statement from Wood county, he had no authority to send for another. Besides, had he done so, it is obvious that he could have obtained no statement different from that already in his office. The defect in the canvass in that county could not have been cured by another canvass, for the state board are prohibited by law from considering any statement or return made by the county canvassers after the time fixed therefor by law, and the latest day thus fixed was November 12th. This was only two days after the canvass in Wood county was made, and the return from that county was not received at the office of the secretary of state until November 14. See R. S., ch. 7, sec. 113.

The state canvassers were powerless in the premises. They can only act upon the certified statements of the county canvassers returned by the several county clerks to the secretary of state, and have no authority to procure corrected returns, or to go behind the returns thus made. R. S., ch. 7, sec. 80. They have, however, pending the present proceedings, voluntarily abstained from making the certificate required by law, of their determination of the result of such election, thus relieving the relator and the court from what might have caused great embarrassment, and have gracefully submitted the whole matter to the adjudication of the court.

The statute carefully guards against excess of election returns, but fails to provide adequate means for supplying deficiencies and correcting errors therein. It is well worthy the consideration of the legislature, whether these tabular statements should not be required to be made and returned, and whether the board of state canvassers should not be clothed with power to enforce the correction of returns which are manifestly erroneous, to the end that the person who is the choice of the electors for any public office may in the first instance receive the certificate of election, and not be driven to assert his title thereto by a proceeding in court, or before a tribunal having jurisdiction to try his right to such office.

State ex rel. McDill vs. The State Canvassers and the Secretary of State.

It follows from the foregoing views that the return to the alternative writ of *mandamus* shows that the board of state canvassers should include the votes returned from Wood county in the canvass and statement of votes given for representative in congress from the eighth congressional district, and should accordingly certify that Judge Cate was duly elected to such office. In other words, the return to such alternative writ shows good and sufficient cause why the peremptory writ of *mandamus*, prayed for by the relator, should not issue. The demurrer to such return must therefore be overruled.

*By the Court.* — Demurrer overruled.

By reason of his absence from the court, caused by the illness of a member of his family, Mr. Justice COLE did not hear the argument of the demurrer, and took no part in the foregoing decision.