*In Re* ELECTION OF UNITED STATES SENATORS.

APRIL 11, 1918.

The following opinion was given under the provisions of Article XII, Section 2 of amendments of the Constitution of the State by the Judges of the Supreme Court to the Governor, April 11, 1918:

*(1) 'Elections.   U. S. Senators.   Advisory Opinions.*

All opinions given by the Supreme Court under the provisions of Section 2 of Article XII of amendments to the constitution of the State are merely advisory in their nature.

*(2)   Elections.   U. S. Senators.*

As by the constitution of the United States, Article I, Section 5, the United States Senate is made the sole judge of the elections, returns and qualifications of its members, the authoritative determination of the question whether a legislature acting under the provisions of the constitution of the United States or the constitution of a State could enact a law which would permit electors qualified to vote for Senators of the United States to vote in some manner provided by such law, when they are absent from the State in the actual military or naval service of the United States, is not within the jurisdiction of the court of last resort of a State.

SUPREME COURT, April 11, 1918.

*To His Excellency R. Livingston Beeckman, Governor of the State of Rhode Island and Providence Plantations:*

We have received from Your Excellency a communication in which are recited certain provisions of the Constitution of the United States, of Article XVII of the Amendments to the Constitution of the United States, and of the Constitution of this State, as follows:

"The first paragraph of Article XVII of the Amendments to the Constitution of the United States is as follows:

'The senate of the United States shall be composed of two senators from each state, elected by the people thereof, for six years; and each senator shall have one vote. The electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislatures.'

"Article I, Section 4, of the Constitution of the United States is as follows:

'Sec. 4. The times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of chusing senators.'

"Article II, Section 6, of the Constitution of Rhode Island is as follows:

'Sec. 6. The general assembly shall have full power to provide for a registry of voters, to prescribe the manner of conducting the elections, the form of certificates, the nature of the evidence to be required in case of a dispute as to the right of any person to vote, and generally to enact all laws necessary to carry this article into effect, and to prevent abuse, corruption and fraud in voting.' "

In said communication Your Excellency has requested our opinion upon the following question, viz.:

"Can the General Assembly, acting under the foregoing or under any other provisions of the Constitution of the United States or the Constitution of the State, enact a law which will permit electors, who would be entitled to vote at an election for United States Senator if such electors were present at the polls within the State at the time of such election, to vote in such an election, in some manner provided by such law, when they are absent from the State in the actual military or naval service of the United States.?"

The test of the correctness and authority of any answer which may be given to this question is: Will a candidate for United States senator be held to be legally elected, in case his election depends upon the votes of electors absent from the State in the circumstances named, when such votes are cast without the State in accordance with the provisions of some law enacted by the General Assembly?

(1)    All opinions given by this Court under the provisions of Section 2 of Article XII of Amendments to the Constitution of the state are merely advisory in their nature. Any answer given by a court to the question now before us must be regarded as inconclusive even as an advisory opinion; since the authoritative determination of this and like questions is not within the jurisdiction of the court of last resort in any state in the Union. By the Constitution of the United States, Article I, Section 5, the United States Senate is made the sole judge of the elections, returns and qualifications of its members. As yet there are no precedents in that tribunal which bear upon the question before us.

This Court in its opinion February 19, 1918, advised Your Excellency that "the right of an elector to vote in the election of all civil officers and on all questions 'in all legal town or ward meetings' under Article II, Section 1 of the Constitution, or 'in all legally organized town or ward meetings' under Article VII of Amendments" could not be exercised by an elector otherwise than in person in said town or ward meetings except as provided by Article IV of Amendments to the Constitution of the State.    In said opinion we also advised Your Excellency that the words "representatives in Congress" appearing in Article IV of Amendments to the Constitution did not include senators in Congress, and further that an act of the General Assembly which would give to electors absent from the State in the actual military service of the United States, the right to vote for senators in Congress was unwarranted under the provisions of said Article IV of Amendments to the constitution of the state. In that opinion we replied only to questions relative to the right of an elector to vote under the provisions of our State Constitution.    There is no other provision of said constitution which authorizes the General Assembly to enact such law.

(2)    The Constitution of the United States is supreme; and in case of conflict between its provisions and those of the constitution of one of the states the Federal Constitution must govern.    Whether under Article I, Section 4 of the United States Constitution the General Assembly is given authority to enact such a law as that referred to by Your Excellency is a question which in our opinion is by no means free from doubt.    Inasmuch as an expression of our opinion upon the question propounded would be nothing more than an attempt to foretell what might be the decision of the United States Senate when such a question should be presented or to suggest what should be its proper action, we think that we cannot properly do more than furnish to Your Excellency such information upon the subject as we have acquired, which is hereinafter contained.

In the advisory opinion given·*In Re the Plurality Elections*, 15 R. I. 617, this Court considered it doubtful whether a law of the General Assembly providing that a plurality of the electors voting might elect a member of Congress was in conflict with a provision then in the State Constitution that a majority of all the electors voting should be necessary to the election of the person voted for; and the Court further said that in its opinion even if such act of the General Assembly should be held to be in conflict with the State Constitution it was within the authority of the General Assembly to enact such law under the provision of Section 4, Article I of the Constitution of the United States giving to the General Assembly the power to prescribe the manner of holding elections for representatives in Congress. In the course of that opinion the Court recognized as it did in the opinion *In Re the Representative Election*, 17 R. I. 820, that the United States House of Representatives is "the final arbiter" in all questions relating to the legality of the election of its members.

During the Civil War a situation arose which had not been within the contemplation of the people of the states in framing their constitutions. In the opinion of many it was unjust that electors, who in the defence of the government were absent from their homes at the time of election, should be deprived of their political right to vote at such election; and it was thought inadvisable that the state should be deprived of the benefit of their votes in the selection of state and national officers. In each of a number of states, in which the State Constitution provided, as it did in Rhode Island, that votes should be cast at elections by the electors in person at polling places within the State, the people adopted an amendment to their constitution authorizing the legislature to provide a method for receiving the votes of electors, who, at the time of an election, were absent from the State in the active military service of the United States. In some of said constitutional amendments the provision was general relating to the election of all officers. In some, as in Rhode

Island, it was restricted to the election of specified officers. In certain states the legislatures without constitutional amendment enacted laws permitting. the votes of electors, so in military service, to be given at places without their respective states. Such legislation was generally held to be unconstitutional so far as the provision related to state officers. In New Hampshire and Vermont the courts held that such a legislative provision, made without constitutional authority, was valid so far as it related to elections for members of the House of Representatives and for presidential electors. *In Re Soldiers' Voting Bill*, 45 N. H. 595; *In Re Act Providing for Soldiers' Voting*, 37 Vt. 665. The constitutionality of such an act passed by the General Assembly of Connecticut, without special constitutional authority therefor, providing that the votes of electors in military service of the United States should be received without the state for certain state officers and for members of Congress came before the Supreme Court of Errors of Connecticut. The Court held that the act, so far as it related to the election of state officers, was unconstitutional; but the Court did not pass upon its validity with respect to the election of members of Congress. Afterwards in August, 1864, the people of Connecticut amended their constitution giving to electors so absent in military service the right to vote in any election for state officers, for representatives in Congress and for presidential electors, and directed the General Assembly to prescribe the manner of receiving such votes. The framers of this amendment considered it necessary, as did the framers of Article IV of Amendments to the Constitution of Rhode Island, to grant special constitutional authority to the legislature, in order to enable that body to provide for receiving the votes of such electors for members of the United States House of Representatives while such electors were absent from the state.

Since the adoption of Article XVII of Amendments to the Constitution of the United States providing for the election of United States senators by the people any necessity, that

previously existed for special constitutional authority to enable the General Assembly to provide for receiving the votes of absent electors for members of the national House of Representatives, would now exist with respect to receiving votes of absent electors for United States senators.

It may be noted that since the adoption of Article XV of Amendments to the Constitution of this State conferring the veto power upon the Governor, an act of the General Assembly relating to the division of the State into three districts for the election of representatives in Congress, and an act prescribing the manner of holding elections for senators and representatives in Congress, have been presented to the Governor for his approval, and have not been treated as operative until signed and approved by him in accordance with the provisions of said Article XV of Amendments to the Constitution. This procedure recognizes that in passing the acts referred, to the General Assembly was not acting independently of the State Constitution. For if the General Assembly is given authority to prescribe the place and manner of holding elections for senators and representatives in Congress, entirely unrestrained by the limitations of the State Constitution, the Governor is without authority to either approve or disapprove its action in that regard.

In *State* v. *Polley*, 26 S. D. 5, decided in 1910, the question considered was whether an act of the legislature of South Dakota prescribing the places and manner of holding elections in that state for members of Congress was subject to the referendum provisions of the State Constitution. The Court held that it was, and gave it as their opinion that the word "legislature" as used in Section 4, Article I, of the Federal Constitution refers to and means the law-making body or power of the state as established by the State Constitution; that the word includes the whole constitutional law-making machinery of the state; and that an act regulating the time, place or manner of holding congressional elections must be referred to the people for their approval in accordance with the Constitution of South Dakota.

The principles involved in the question before us have frequently been considered by the national House of Representatives in contested election cases before it.    Courts have not generally regarded the determination by legislative bodies of the legal questions involved in election contests as entitled to the force of judicial opinions.    The membership, however, of the Congressional Election Committee in the cases which we have examined has included many lawyers of recognized ability whose opinions upon constitutional questions are entitled to attentive consideration. Moreover, the national House of Representatives is the only tribunal that can determine the validity of the election of representatives in Congress.    The same is true with regard to the exclusive jurisdiction of the United States Senate to determine as to the legality of the election of its members. The extent of the power of the General Assembly to prescribe the time, place and manner of holding elections for members of either of the houses of Congress depends upon the construction which shall be given to Section 4 of Article I of the United States Constitution.    The contested election case of *Farlee* v. *Runk*, in the Twenty-Ninth Congress, reported in 1 Bartlett's Contested Election Cases, at page 87, has been referred to as a determination by the House of Representatives that when there is a conflict between the constitution of a state and an act of the legislature of that state in regard to the place of voting for representatives in Congress, the provisions of the constitution are binding. Under the construction given by the Election Committee to a provision of the state Constitution of New Jersey a student at Princeton, who was a qualified elector of the state in other respects, and a resident of Princeton for more than five months, might vote for a member of the national House of Representatives in the congressional district which included Princeton.    Under an act of the legislature of New Jersey such student who had left his home in another part of the state to attend the college or seminary at Princeton should vote in the congressional district in which his home

was situated. The report of the Congressional Election Committee, that such student properly voted at Princeton in accordance with the State Constitution and contrary to the provision of the statute, was adopted by the House. It might be said with reference to this case that the question involved the qualification of an elector rather than the place of holding an election. It has been cited, however, in *State* v. *Polley, supra*, and upon the floor of the House of Representatives as an authority upon the latter point. In the case of *Shiel* v. *Thayer*, in the Thirty-Seventh Congress, reported in 1 Bartlett's Contested Cases, at page 349, the committee upon elections, composed of members of both political parties, unanimously reported that the Constitution of Oregon by its provision that elections should be held on the first Monday of June, biennially, had "fixed beyond the control of the legislature, the time for holding an election of representative in Congress at the general election to be held biennially and that at such election so held in pursuance of the constitution the contestant was duly elected to the Thirty-Seventh Congress." In the course of the debate upon the report, the provisions of Section 4 of Article I of the Federal Constitution were urged as a reason for rejecting the report of the committee upon elections. Mr. Dawes of Massachusetts, chairman of the committee, stated that the report was in accord with the precedents of the house. The report of the committee was adopted and the contestant was seated. In the case of *Baldwin* v. *Trowbridge*, in the Thirty-Eighth Congress, reported in 2 Bartlett's Contested Election Cases, at page 46, in which the question of the right of soldiers to vote outside of the state was raised, the report of the majority of the committee on elections approved the principle; that when there is a conflict of authority between the constitution of a state and an act of the legislature of that state in regard to fixing the place of an election for member of Congress, the power of the legislature is paramount. The majority report was adopted by the house. In this case a very thoroughly considered minority

report'was submitted. In the minority report the question as to the construction which properly should be placed upon Section 4 of Article I of the Constitution of the United States is considered at length; and it is asserted that the majority report conflicts with all the precedents established by the house.

There is therefore one view, that Section 4 of Article I of the Federal Constitution, in directing that state legislatures should prescribe the time, place and manner of holding elections for senators and representatives in Congress, intended to confer that power upon the legislatures unrestrained by the organic laws of their respective states; the contrary view is found in the position taken by the Court in *State* v. *Polley, supra,* in the majority report in *Shiel* v. *Thayer, supra,* and in the minority report in *Baldwin* v. *Trowbridge, supra;* that the powers conferred by Section 4 of Article I of the Federal Constitution were not given to the members who composed the legislature of a state, but to the legislature itself as it had been established by the people of that state in their constitution; and that in carrying out this direction of the Federal Constitution the legislature should not act independently and in disregard of the provisions of the State Constitution, but in conformity therewith unless such provisions were in conflict with the Constitution of the United States. As we have pointed out to Your Excellency which of these views should prevail the courts in the several states have no power definitely to determine. The Senate itself is the sole judge. What its action will be in a particular case it is impossible to predict.

> C. FRANK PARKHURST,
> WILLIAM H. SWEETLAND,
> WALTER B. VINCENT,
> DARIUS BAKER,
> CHARLES F. STEARNS.