STATE EX REL. WETTENGEL, Petitioner, vs. ZIMMERMAN, Secretary of State, and others, Respondents.

*September 20—September 28, 1946.*

238

*Perry J. Stearns* of Milwaukee, attorney, and *A. J. Bieber-stein* of Madison, and *George B. Skogmo* and *Walter D. Corrigan, Sr.,* both of Milwaukee, of counsel, for the petitioner.

The *Attorney General* and *Warren H. Resh,* assistant attorney general, for the respondents secretary of state and state board of canvassers.

*Eberlein & Eberlein* and *M. G. Eberlein, Sr.*, all of Shawano, and *J. G. Hardgrove* of Milwaukee, for the respondent Joseph R. McCarthy.

ROSENBERRY, C. J.   The petition of the relator concerning as it does the choice of a senator of the United States must be determined in accordance with federal law.

Art. I of the constitution of the United States provides:

"Section 3.  . . . No person shall be a senator who shall not have attained to the age of thirty years, and been nine years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state for which he shall be chosen. . . ."

"Section 4.   The times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of chusing senators. . . ."

"Section 5.   Each house shall be the judge of the elections, returns and qualifications of its own members. . . ."

It is the contention of the relator that the United States congress not having acted under sec. 4, art. I, U. S. Const., to prescribe the times, places, and manner of holding elections that all election matters and machinery of elections is in the hands of the state, except as to the National Corrupt Practices Act.

It is further argued that there is room for a state constitution and state laws to fulfil their mission without conflict with the federal constitution or the jurisdiction and power of the senate; that when state provisions have served their purpose and the election has been certified, the senate has jurisdiction of the eligibility of the person elected to be senator.

In the celebrated case of *Dred Scott v. Sandford* (1857), 19 How. 393, 15 L. Ed. 691, it was held that in the United States a double citizenship exists.   The term as used in our law ap-

.plies to membership in the nation considered as a whole and to membership in the state in which the individual may reside. The citizens of the United States resident in each state are subject to two governments, one state, the other national. Every citizen owes allegiance to both of these governments and within their respective spheres must be obedient to the laws of each. In return he is entitled to demand protection from each within its own jurisdiction. While the major part of the decision in this case has become obsolete by reason of the subsequent adoption of the Fourteenth and Fifteenth amendments, so far as we are able to ascertain, the decision of the supreme court of the United States in that case relating to dual citizenship has never been overruled or modified.

The argument in support of the petition does not give full weight to this fundamental principle in our constitutional law. The idea that in the election of a United States senator the state has exclusive jurisdiction of the process until the moment that a candidate certified as having a majority of the votes cast for the office presents himself at the bar of the senate, cannot be sustained. While the fact that the same persons act as election officers and that the election is held at the same time and place as are the elections held for state officers, may obscure but it does not destroy the fact that these officers act in the two capacities; that they so act is conclusively shown by the fact that congress may at any time make or alter regulations relating to the election of United States senators as it chooses except that it may not change the places of choosing senators.

When the Wisconsin legislature enacted a law relating to the times, places, and manner of holding elections for senators and representatives, the times and places so fixed and the manner so prescribed apply to a choice of a United States senator not because of any provision of state law but because of the provisions of the United States constitution.

The contention that the election process is wholly within the jurisdiction of the state and no conflict can arise until some

candidate has been certified to the United States senate as the elected representative of the state, is unsound.

The proceedings up to and including the issuance of the certificate of election are wholly within the control of congress. It was formerly held that primaries were not a part of the election process but that is no longer the established law.

In *Newberry v. United States* (1921), 256 U. S. 232, 41 Sup. Ct. 469, 65 L. Ed. 913, the supreme court of the United States left undecided whether primaries were a part of elections and therefore subject to federal control. The question left undecided in the *Newberry Case* was decided in *United States v. Classic* (1941), 313 U. S. 299, 61 Sup. Ct. 1031, 85 L. Ed. 1368, and the doctrine was affirmed in *Smith v. Allwright* (1944), 321 U. S. 649, 64 Sup. Ct. 757, 88 L. Ed. 987. In *Smith v. Allwright* the court held:

The right of a citizen of the United States to vote for the nomination of candidates for the United States senate and house of representatives in a primary which is an integral part of the elective process is a right secured by the federal constitution.

It was further held that when as in the *Allwright Case, supra,* the primary became a part of the machinery for choosing officials, state and federal, the same test to determine the character of discrimination or abridgment should be applied to the primary as are applied to the general election.

The court overruled *Grovey v. Townsend* (1935), 295 U. S. 45, 55 Sup. Ct. 622, 79 L. Ed. 1292, which had held to the contrary.

There can be no doubt that under the laws of the state of Wisconsin the primary election law is an integral part of the election process. No person can become a candidate of a political party in Wisconsin unless he can be a candidate for nomination by that party at a primary election.

The primary is therefore an integral part of the election process and congress under sec. 5, art. I, U. S. Const., has the same jurisdiction of primaries for nominations in Wis-

consin as it has over elections for the office of United States senator.

In *State ex rel. McDill v. State Board of Canvassers* (1874), 36 Wis. 498, this court held that the power of determining the right to the office of a representative in the congress of the United States is vested by the constitution of the United States exclusively in the house of representatives itself. It further held: This court, therefore, cannot go behind the returns and investigate frauds and mistakes, and adjudge which candidate was elected.

That election officers, although appointed by the state in the holding of a congressional or senatorial election, act under and pursuant to the authority conferred upon them by the constitution of the United States is established beyond doubt by the case of *Ex parte Siebold* (1879), 100 U. S. 371, 25 L. Ed. 717. In that case it was held that congress had power to make it a penal offense against the United States for any officer of election, at an election held for a representative in congress, to neglect to perform or to violate, any duty in regard to such election, whether required by a law of the state or of the United States.

Under *United States v. Classic, supra,* and *Smith v. Allwright, supra,* the same rules of law are applicable to a primary for the nomination for United States senator that are applicable to an election for United States senator.

It is well established that under the provisions of sec. 5, art. I, U. S. Const., courts have no jurisdiction to judge of the returns and elections of United States senators.

In this connection it is to be remembered that when the house of representatives or the United States senate passes upon the returns, elections, or the qualifications of its members, it acts not in a legislative but in a judicial capacity. *Barry v. United States ex rel. Cunningham* (1929), 279 U. S. 597, 613, 49 Sup. Ct. 452, 73 L. Ed. 867. That jurisdiction having been vested by the constitution in the United States

senate, its jurisdiction is exclusive and no other judicial bodies, including courts, have jurisdiction of those matters so committed exclusively to the houses of congress. We have already referred to *State ex rel. McDill v. State Board of Canvassers, supra.*

This doctrine has been generally recognized in this country as will appear from consideration of the following cases: In *McLeod v. State Board of Canvassers* (1942), 304 Mich. 120, 7 N. W. (2d) 240, the supreme court of the state of Michigan held that where a constitutional or statutory provision makes a legislative body the sole judge of the election and qualifications of its own members, the final decision rests in such body, and courts cannot interfere. Citing *Williams v. Maas* (1936), 198 Minn. 516, 270 N. W. 586; *Smith v. Polk* (1939), 135 Ohio St. 70, 19 N. E. (2d) 281; *Burchell v. State Board of Election Commissioners,* 252 Ky. 823, 68 S. W. (2d) 427.

The court held that in addition to being applicable to members of the congress it was applicable to members of the common council under a city charter and to members of the state legislature. The application to stay proceedings for a recount was denied.

To the effect that federal courts have no such jurisdiction, see *Sevilla v. Elizalde* (D. C. App. 1940), 112 Fed. (2d) 29.

In *State ex rel. Sundfor v. Thorson* (1942), 72 N. D. 246, 6 N. W. (2d) 89, the supreme court of North Dakota held that a state statute prohibiting a defeated primary candidate from being a candidate for the same office at the ensuing general election was not regulatory but added a qualification for holding the office of representative in congress in addition to those fixed by the federal constitution, and could not stand as conflicting with the federal constitutional provision that no person shall be a representative who shall not have attained to the age of twenty-five years, etc.

In *Williams v. Maas* (1936), 198 Minn. 516, 270 N. W. 586, it was held that the federal house of representatives has

exclusive jurisdiction to determine whether a candidate declared to be elected to the house was in fact the recipient of a plurality of votes cast at election.

The supreme court of Kentucky in *Burchell v. State Board of Election Commissioners* (1934), 252 Ky. 823, 68 S. W. (2d) 427, held that the provision of the United States constitution that each house shall be the judge of the returns, elections, and qualifications of its own members vested exclusive jurisdiction in the house of representatives to determine the right of a representative to sit and a state court has no jurisdiction of a suit to compel election commissioners to issue an election certificate to a candidate for congress where if the relief were granted it would affect the title of representatives already declared elected.

In *State ex rel. 25 Voters v. Selvig* (1927), 170 Minn. 406, 212 N. W. 604, it was held that state courts have no jurisdiction to adjudge the election of a member of congress invalid for violation of a state corrupt practices act.

In *In re Election of United States Senators* (1918), 41 R. I. 209, 103 Atl. 513, there was involved the right of the legislature to enact a valid law permitting members of the military and naval forces of the United States to vote when outside of the state, which was in violation of the constitution of the state of Rhode Island, which provided that all votes at elections should be cast by the electors in person at polling places within the state. The court rendered an advisory opinion that it had no jurisdiction to determine the question because it related to the validity of an election for United States senator.

In this case a primary election has been duly held, the state board of canvassers has in the manner and form required by law certified to the secretary of state the name of Joseph R. McCarthy as the nominee of the Republican party for the office of United States senator at the ensuing November election; the petitioner asks that the certificate be canceled, a new certificate issued, and the name of Robert M. La Follette be sub-

stituted as nominee of the Republican party, on the ground that Joseph R. McCarthy was disqualified to be a candidate for said nomination for the reason that he held the office of circuit judge in violation of the provisions of sec. 10, art. VII, of the constitution of the state of Wisconsin, which provides :

"Section 10.    Each of the judges of the supreme and circuit courts shall . . . hold no office of public trust, except a judicial office, during the term for which they are respectively elected, and all votes for either of them for any office, except a judical office, given by the legislature or the people, shall be void. . . ."

What the relator asks the court to do is to hold that Mr. McCarthy is disqualified to be a candidate for the nomination by the Republican party for the office of senator of the United States by virtue of the provisions of sec. 10, art. VII, Wis. Const.    The process of nomination under Wisconsin law is an integral part of the election process and is therefore, as has already been stated, wholly within the jurisdiction of the United States senate.    If Mr. McCarthy under Wisconsin law cannot be a candidate for nomination at the primary, he can never be a candidate at the election of any political party. He is therefore disqualified to take the first step if the argument of the relator is sound.    His right to be a candidate at the election would be a barren right.    Neither by constitutional provision nor legislative enactment can the state of Wisconsin prescribe qualifications of a candidate for nomination for the office of United States senator in addition to those prescribed by the constitution of the United States.

An ingenious argument in support of the petition was presented to the effect that by the provisions of sec. 10, art. VII, of the Wisconsin constitution, already set out, all ballots cast for a judge for any office, except a judicial office, during the term of office for which he was elected, are made void and therefore cannot be counted.    The provision that all votes cast for a judge during his term of office for any office of public

trust except a judicial office shall be void is dependent upon and supplementary to the provisions of sec. 10, art. VII, Wis. Const., which disqualify a judge from being a candidate for any other office. That provision cannot be separated from its context and made self-executing so as to authorize election officials to refuse to count such ballots.

It is pointed out that we are not here dealing with the failure or refusal of any election official to perform his duty in accordance with the laws of the state of Wisconsin and the United States.

*By the Court.*—It is ordered that the petition be dismissed for the reason that the court has no jurisdiction to cancel the certificate issued by the state board of canvassers and compel it to issue one designating Robert M. La Follette as the candidate of the Republican party, for the office of United States senator.