GERALD J. FERWERDA, Executive Secretary, State Elections Board
You point out that the newly established plan for the public financing of statewide election campaigns contained in sec.11.50, Stats., as created by ch. 107, Laws of 1977, requires, in part, that candidates desiring grants from the Wisconsin election campaign fund created by the statute must agree to limit their total disbursements, in the primary as well as in the spring or general election, to the maximums authorized for each election under sec. 11.31, Stats., even though any public grant available from the fund can only be utilized in the spring or general election. Sec. 11.50 (2) and (11)(a), Stats. (1977). On behalf of the Elections Board, you request my opinion on the constitutionality of the imposition of limits on the primary election campaign expenditures of candidates seeking public financing of their spring or general election campaigns.
A proper response to your question may be gleaned from the guidelines set forth in Buckley v. Valeo, 424 U.S. 1 (1976), which invalidated much of the Federal Election Campaign Act of 1971, as amended in 1974. This case has been previously discussed in reference to various provisions of Wisconsin's campaign finance law in 65 Op. Att'y Gen. 145 and 237 (1976).
Although the court in Buckley held that the federal Act's expenditure limits were unconstitutional because such provisions placed "substantial and direct restrictions on the ability of candidates, citizens, and associations to engage in protected political expression, restrictions that the First Amendment cannot tolerate," 424 U.S. at 58-59, the Court nevertheless upheld expenditure limitations voluntarily accepted by a candidate as a condition of the receipt of public financing of his campaign, saying, at 424 U.S. 57, footnote 65: *Page 322 
 "For the reasons discussed in Part III, infra, Congress may engage in public financing of election campaigns and may condition acceptance of public funds on an agreement by the candidate to abide by specified expenditure limitations. Just as a candidate may voluntarily limit the size of the contributions he chooses to accept, he may decide to forgo private fundraising and accept public funding."
See also 424 U.S. at 85-109.
The comprehensive funding plan for the public financing of presidential election campaigns treated in Buckley provided separately for the funding of party nominating conventions, primary election campaigns and general election campaigns and established corresponding expenditure limitations in reference to each phase of the election process. 424 U.S. at 85-90. But, I find no basis in that case nor can I conceive of any good reason for concluding that campaign expenditure limitations may only relate to those portions of the total election process for which funding is made available.
The aims of the Wisconsin Legislature in creating sec. 11.50, Stats., and its related statutory provisions appear similar to those which apparently motivated Congress to tie expenditure limits to the receipt of public funding for campaigns. Among those motivations recognized by the Buckley Court was an intent "to reduce the deleterious influence of large contributions on our political process, to facilitate communication by candidates with the electorate, and to free candidates from the rigors of fundraising," 424 U.S. at 91, to require "`some preliminary showing of a significant modicum of support"' of candidates seeking funding, 424 U.S. at 96, and "to reduce financial barriers and to enhance the importance of smaller contributions,"424 U.S. at 107. These aims are just as meritorious applied to the primary as when applied to the final election. The primary is, after all, an integral part of the election process. State exrel. Wettengel v. Zimmerman, 249 Wis. 237, 243, 24 N.W.2d 504
(1946). In fact, it is doubtful whether these aims could be effectively realized if those who wished public financing of their spring or general election campaigns were free of any spending constraints whatsoever prior to those final campaigns.
Some candidates who have applied for spring or general election funding under sec. 11.50, Stats., and have complied with the primary *Page 323 
election disbursement limitations as a precondition to receipt of a grant under that section, may not be finally approved as an "eligible candidate" for participation in the fund. That result, however, does not cause sec. 11.50 to be constitutionally infirm.
The decision to accept the conditions attached to public funding of spring and general election campaigns entails a voluntary choice on the part of each applicant. It is neither unreasonable as a matter of legislative choice nor unfair to the individual applicants for aid to require that they compete for such funding on the basis of some semblance of financial equality. Those who prefer to avoid any limitations on the level of their campaign spending are in no way hindered by the provisions of sec. 11.50, Stats., while even those who apply and fail to qualify for such funding are likewise free from further disbursement limitations.
In conclusion, it is my opinion that the provisions of sec.11.50, Stats., which impose limits on the primary election campaign expenditures of candidates seeking public financing of their spring or general election campaigns do not unconstitutionally burden or disadvantage any candidate for any public office covered by the statute.
BCL:JCM