In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00164-CR


______________________________




ROBIN DEWAYNE FRIED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 34287-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Robin Dewayne Fried guilty of driving while intoxicated (DWI)--subsequent
offense. See Tex. Penal Code Ann. § 49.04 (Vernon 2003) (defining crime of DWI), § 49.09
(Vernon Supp. 2006) (outlining penalties for subsequent offenses). The jury assessed Fried's
punishment at thirteen years' imprisonment. Fried now appeals, raising four points of error. Finding
no reversible error in the proceedings below, we affirm.

I. Jury Instruction

 In his first point of error, Fried contends the trial court submitted an erroneous instruction
to the jury regarding his right to refuse to submit a breath specimen when requested by the police
officer on the night of Fried's arrest. "A jury charge must distinctly set forth the law applicable to
the case and set out all of the essential elements of the offense." Martin v. State, 200 S.W.3d 635,
639 (Tex. Crim. App. 2006) (citing Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 1981)). The
jury instruction at issue in this case informed the jury that, "You are instructed that you may consider
the defendant's refusal to submit to a breath test, if he did, as evidence of intoxication in this case." 
Fried objected to the instruction, but articulated no specific justification for opposing the instruction. 
The trial court overruled Fried's general objection and included the instruction in its jury charge.

 "Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as a prerequisite to
presenting a complaint for appellate review, the record must show that the complaint was made to
the trial court by a timely and specific request, objection, or motion." Griggs v. State,
No. PD-0727-05, 2007 Tex. Crim. App. LEXIS 99, at *9 (Tex. Crim. App. Jan. 31, 2007). In this
case, Fried's general objection was insufficient to apprise the trial court of the alleged error now
raised on appeal. Accordingly, this issue has not been preserved for appellate review. Cf. Rogers
v. State, 105 S.W.3d 630 (Tex. Crim. App. 2003) (objection raised failed to articulate basis; alleged
charge error not preserved).

II. State's Closing Argument at Punishment

 In his second point of error, Fried contends the State's closing argument during the
punishment phase of the trial was improper and harmful. The State's closing argument at issue
included the following:

 [The State]: Misdemeanor after misdemeanor after misdemeanor. Do I get
loud and passionate? Yes, I do. I don't apologize for that, because I think defendants
ought to be treated the same way they treat their victims, and we're all the victims of
this crime.

 Now, here, you punish the actor and you punish the crime. You consider all
of this. Of course, Mr. Cone didn't spend much time talking about it, because he'd
just [as] soon you forget, turn the chart around, don't remember all the DWI offenses
that [Fried has] committed, not only in this county, Harrison County, Marion County.

 This is what I ask you to do. And you're right, let's start with the high end,
okay? Let's start with 20 years.


 Give him credit off that sentence for accepting responsibility in this case. 
Well, we can't do that, because yesterday when I read that indictment, "Did you or
did you not commit this offense on March 25th, 2006?" He's not guilty.


 [Defense Counsel]: Your Honor, he has an absolute right to plead not guilty. 
To hold that against him is not fair. 


 THE COURT: I sustain. Disregard it.


 [The State]: Still at 20. 

 Let's talk about rehabilitation, okay. Probation, prison. Is there any
demonstration in this evidence which you can reasonably deduce from this evidence
that has shown you anything that has changed him? You can't. We're still at 20. 

 To preserve error in a jury argument, a party must object to the argument and pursue that
objection to an adverse ruling, even to the point, if necessary, of requesting the trial court to declare
a mistrial. Mathis v. State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002); Cockrell v. State, 933
S.W.2d 73 (Tex. Crim. App. 1996). In this case, the trial court sustained Fried's objection to the
State's closing argument. The trial court, though, granted relief that was greater than that which was
requested by instructing the jury--sua sponte--to disregard the State's argument. Fried made no
further objection, and he failed to pursue his objection to an adverse ruling. Accordingly, Fried has
failed to preserve the alleged error for appellate review.

III. Evidentiary Sufficiency

 In his third and fourth points of error, Fried contends the evidence is legally and factually
insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view
the relevant evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we view
all the evidence in a neutral light and determine whether the evidence supporting the verdict is so
weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and
preponderance of the evidence is contrary to the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006); see also Johnson, 23 S.W.3d at 7; Clewis v. State, 922 S.W.2d 126, 134 (Tex.
Crim. App. 1996).

 A person commits the crime of DWI if he operates a motor vehicle in a public place while
not having the normal use of his mental and/or physical faculties because he has ingested alcohol,
a controlled substance, a drug, a dangerous drug, or any combination of those items. Tex. Penal
Code Ann. § 49.01(2) (Vernon 2003) (defining "intoxication"), § 49.04. The only contested issue
at trial was whether Fried was intoxicated at the time he operated a motor vehicle. 

 Suzanne Hardee, the arresting officer, testified she saw Fried's car drift left and right within
the marked lane on several occasions. Hardee also witnessed that vehicle drift from the outside
northbound lane into the inside northbound lane. In her continued testimony, Hardee described to
the jury how she witnessed Fried make a "[w]ide right turn" into the oncoming lane of traffic when
Fried's vehicle turned off of High Street onto Nelson Street near downtown Longview. Finally, just
before Hardee made the traffic stop, Fried drifted into the lane of oncoming traffic and came "[t]oo
close" to hitting another vehicle traveling toward Fried. 

 When Hardee made contact with Fried, she could smell alcohol coming from his breath. 
Hardee asked Fried to perform several field sobriety tests, including the Horizontal Gaze Nystagmus
(HGN) test. For the HGN test, Hardee testified that Fried's eyes did not equally track the stimulus
during the administration of this test, that Fried's eyes did not pursue the stimulus smoothly, and
exhibited nystagmus at maximum deviation in both eyes. Thus, Hardee concluded that Fried had
failed the HGN test by exhibiting six clues (out of a possible six), suggesting intoxication. Fried also
performed the "[w]alk and turn" test, which Hardee testified Fried failed, and the "one leg stand" test,
which Hardee said Fried refused to perform. Based on his performance during these field sobriety
tests, Hardee concluded Fried had lost the normal use of his mental or physical faculties due to the
ingestion of alcohol. Later, when requested to provide a specimen of his breath for the purpose of
testing it for alcohol concentration, Fried refused to provide a specimen. 

 On cross-examination, Fried attempted to discredit the officer's administration of each of the
field sobriety tests. For example, with the HGN test, Fried's cross-examination suggested Hardee
may have held the stimulus at a distance greater than the required twelve to fifteen inches from
Fried's nose, thus calling into question the validity of Fried's "failure." She also admitted that the
scientific research suggested HGN had only about a seventy-seven percent accuracy in predicting
intoxication. Fried also pointed out that the National Highway Transportation Safety Administration
standard for the "[w]alk and turn" test requires officers to ask certain questions of the suspect (such
as whether Fried had any problems with his feet or legs which might prevent him from performing
that particular test), some of which Hardee did not ask. These divided attention span sobriety tests
were also not administered on the recommended flat surface, but were instead performed on a gravel
parking lot. 

 In addition to the field sobriety tests, Hardee reported that she smelled alcohol on Fried's
breath and that she had seen him drive in and out of his traffic lane several times; she also opined
that Fried's alcohol consumption had caused him to lose the normal use of his mental or physical
faculties for purposes of driving his automobile. Regardless of whether the jury gave any credence
to the officer's assessment of Fried's performance during the field sobriety tests or whether it did not,
the jury heard other uncontested evidence from which it could have determined that the State had
met its burden of proof in this case. Thus, the evidence is legally sufficient to support the jury's
verdict. Moreover, we cannot say that the jury's verdict is so against the great weight of contrary
evidence or that the jury's verdict is manifestly unjust under these circumstances. Accordingly, we
also conclude the evidence is factually sufficient to support the verdict. Fried's remaining points of
error are overruled.

 For the reasons stated, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: January 26, 2007

Date Decided: March 1, 2007


Do Not Publish


          That is merely the preliminary portion of the Dred Scott analysis, which then veered
into other areas, including the question of whether, because of Scott's or his family's
presence in a United States territory which did not recognize slavery, his status altered
sufficiently to permit him to file suit, and also addressed the constitutionality of the Missouri
Compromise law. 
          Barcroft's claimed status is, at this point in our history, imaginary. With the
conclusion of the Civil War and the implementation of the constitutional amendments
following the conflict, although at one point the law of the land at least contemplated
different classes of inhabitants–although not different classes of citizens–that portion of the
Dred Scott decision was overrun by events and is no longer any more than a historical
footnote in our jurisprudence. There is no dichotomy between different citizens, and there
are not two classes of citizens in the United States. The "sovereign" language on which
Barcroft relies is part of the Court's analysis determining who may constitute a citizen by
reviewing which "classes" of individuals were treated as such at the time of the creation of
the Constitution. With the ending of the Civil War and the enactment of legislation and
constitutional amendments after that time, such an analysis became unnecessary; the
classification distinctions based on race on which Chief Justice Taney relied no longer
exist, by constitutional fiat. See U.S. Const. amends. XIII, XIV. We cannot countenance
Barcroft's position that he is a "sovereign" of any description, or that he is in any way
possessed of constitutional rights that exceed or differ from those of other citizens. 
          Barcroft also supports his argument with caselaw that states there are two classes
of citizens in America. His statement, in one sense, is correct. However, in context, those
decisions refer to the fact that citizens of the United States are subject to two governments,
federal and state, and that they owe allegiance to both. See State ex rel. Wettengel v.
Zimmerman, 24 N.W.2d 504, 506 (Wis. 1946). These cases do not, however, support his
contention that multiple types of federal citizens exist which enjoy differing levels of status.
          We acknowledge that, in one sense of the word, as described by Barcroft in his
brief, the authority of the Union derives from the people, and thus they are the true
"sovereigns" of the nation. That fact does not, however, support his conclusion that there
is a classification of sovereign citizenry that differs from the rank and file citizenry.
          Barcroft filed suit claiming a capacity to recover under this claimed status. The
status does not exist. The question is what effect this may have on his ability to continue
with this lawsuit. We have found no cases directly on point and thus must resort to
analogous situations. We recognized in Miller that "[i]t has long been settled that the
'estate' of a decedent is not a legal entity and may not sue or be sued as such." Miller v.
Self, No. 06-02-00129-CV, 2003 WL 21696955, at *1 (Tex. App.‒Texarkana July 23, 2003,
no pet.) (citing Price v. Estate of Anderson, 522 S.W.2d 690, 691 (Tex. 1975)). Similarly,
there are a legion of cases addressing situations where businesses and/or individuals who
sue in a capacity which they do not have or who are sued in an incorrect capacity may
neither pursue a lawsuit nor be found liable in a lawsuit. For example, though a failure to
file an assumed name certificate does not render a plaintiff's claim void, it does, like the
failure to pay a corporate registration fee, affect such plaintiff's ability to recover in litigation
brought in that capacity. Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 55 (Tex.
2003); cf. Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880,
884-85 (Tex. 2001) (holding corporation's failure to pay registration fee for conducting
business in Texas affects its capacity to sue); Nootsie, Ltd., 925 S.W.2d at 661 ("[A] party
has capacity when it has the legal authority to act, regardless of whether it has a justiciable
interest in the controversy.").
          Similarly, it is long-settled law that, to impose liability on a party, a plaintiff must sue
the party in the capacity from which that plaintiff seeks to recover. Thus, a suit against a
person named individually seeks to impose personal liability on the individual being sued,
while a suit against the person as an agent of a corporation or other business interest
attempts to impose liability against the business.
          Yet another variation is found in lawsuits brought against a person in an official
capacity where a plaintiff is actually seeking to impose liability against the governmental
unit the sued person represents, rather than on the individual specifically named. Vela v.
Rocha, 52 S.W.3d 398, 403 (Tex. App.‒Corpus Christi 2001, no pet.) (citing Kentucky v.
Graham, 473 U.S. 159, 165 (1985)). In that scenario, the suit is in actuality one against
the governmental unit, which is the legal entity that will be held liable for any judgment
rendered against the individual sued in an official capacity. Graham, 473 U.S. at 165-66.
          In this case, Barcroft brought his litigation to court in a capacity that does not exist
and he seeks to recover based only on that capacity. He was offered and declined the
invitation to amend his pleading to correct the defect. We must therefore conclude the trial
court did not err by dismissing the lawsuit based on a lack of capacity. 
          We now turn to the remaining question of whether the trial court erred by not merely
dismissing the lawsuit, but by dismissing with prejudice. Dismissal with prejudice
constitutes an adjudication on the merits and operates as if the case had been fully tried
and decided. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex. 1991). If a pleading defect
cannot be cured by amendment, dismissal may be with prejudice. See, e.g., Joseph E.
Seagram & Sons, Inc. v. McGuire, 814 S.W.2d 385 (Tex. 1991); Texas-Ohio Gas, Inc. v.
Mecom, 28 S.W.3d 129, 146 (Tex. App.‒Texarkana 2000, no pet.). However, a trial court
should not dismiss a plaintiff's claims with prejudice if the pleadings state a valid cause of
action and the pleading defect could be cured by amendment. Mecom, 28 S.W.3d at 146; 
Kutch v. Del Mar Coll., 831 S.W.2d 506, 508 (Tex. App.‒Corpus Christi 1992, no writ);
Atkinson v. Reid, 625 S.W.2d 64, 66 (Tex. App.‒San Antonio 1981, no writ). Under those
circumstances, the proper remedy is to dismiss without prejudice. Kutch, 831 S.W.2d at
508.
          This is one of those situations. Barcroft could have amended his petition to change
the capacity in which he brought suit. Thus, the court erred by dismissing with prejudice.
 

          The judgment is reversed in part and reformed to reflect that the case was
dismissed without prejudice; otherwise, the judgment is affirmed.
 

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      September 26, 2003
Date Decided:         October 27, 2003