**Albert Lynn BARCROFT, Appellant,**

v.

**COUNTY OF FANNIN, State of Texas, et al., Appellees.**

No. 06–03–00021–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 26, 2003.

Decided Oct. 27, 2003.

Rehearing Overruled Nov. 15, 2003.

Albert Lynn Barcroft, Trenton, pro se.

Gary Shaver, Boon, Shaver, Echols & Coleman, Longview, Robert H. Dawson, Jr., Dallas, David C. Turner Jr., Turner & Turner, LLP, Michael Skotnik, Asst. Dist. Atty., Bonham, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This is a lawsuit in which Albert Lynn Barcroft, in his claimed capacity as a "sovereign," sued Fannin County, the City of Paris, various public officials and peace officers, as well as a body shop, and Curtis Rives. Barcroft's lawsuit is based on the entry onto his property by a number of peace officers, pursuant to a search warrant, and having a trailer (that the officers believed to have been stolen) towed away from his property. Barcroft also alleges the officers rifled his personal belongings and stole cash from his house.

The defendants filed special exceptions against Barcroft's petition on a number of grounds, including claims that his allegations were too vague, that the petition failed to state any cause of action known to law, that it failed to set out any justiciable controversy that could be addressed by the court, as well as raising affirmative defenses suggesting that the matters raised by Barcroft's pleadings were not matters for

judicial determination, but were matters properly brought before the Legislature. The defendants also complained that Barcroft was claiming he was suing as a "sovereign" and therefore could not recover.

The trial court afforded Barcroft an opportunity to amend his petition to change the status in which he brought his lawsuit, but Barcroft refused. The trial court then rendered judgment dismissing Barcroft's petition "with respect to Plaintiff's claimed status as a 'sovereign.'" The court found that Barcroft had declared himself a sovereign; that, in that status, he lacked standing to proceed; and that Barcroft was barred by the Texas Constitution from appearing as an independent sovereign not subject to the laws of Texas. The court ordered the action dismissed with prejudice because Barcroft had no standing and could not recover in the capacity of a "sovereign."

We have reviewed the petition filed by Barcroft. It alleges the named persons and entities violated his constitutional rights in various respects, ranging from allegations of trespass and illegal entry, along with "unauthorized use of [the sovereign's] Land" and deprivation of personal property, to theft of money by one of the police officers who entered his house and wrongful photographing of his personal effects.

Barcroft raises a number of arguments on appeal, all centering around his position that the actions of the trial court violate his constitutional rights. He specifically contends the court denied him a "republican form of government," that it denied him, as "one of the sovereign American People," access to the courts solely because of his national origin, that doing so violated his due process rights, that the court violated the separation of powers clause by failing to follow the rules set out by the Legislature, and that the trial court's ruling constitutes a violation of the contract between the government and the "sovereign people."

The issue is whether the trial court erred by dismissing Barcroft's lawsuit for the reasons stated. The various appellees have filed briefs which primarily take aim at the merits of Barcroft's underlying lawsuit. This is a dismissal on the pleadings. The trial court did not purport to rule on the merits of the case, and we cannot address those matters.

■ There are a number of problems with the posture of this case. First, the dismissal could be read to be based on one of two conclusions stated in the judgment: Barcroft either lacked standing to bring suit, or had a lack of capacity to recover. Those two terms are related, but are not interchangeable. A lack of standing is jurisdictional in nature and may be raised at any point in the proceeding. A lack of capacity is not jurisdictional.

■ The distinction is this: a plaintiff has standing when he or she is personally aggrieved, regardless of whether he or she is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether he or she has a justiciable interest in the controversy. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996); *see Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988). Capacity is thus a party's legal authority to go into court and prosecute or defend a suit. *Davis v. City of Houston*, 869 S.W.2d 493, 494 n. 1 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

■ It therefore follows that, for a plaintiff to bring a suit *and* recover on a cause of action, the plaintiff must have both capacity and standing. *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247,

250 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

The judgment refers to both concepts as its basis for dismissal. Because it is jurisdictional, we first look at the standing issue. Determining whether Barcroft has standing appears to be complicated because he explicitly seeks to recover, not as a person who is a citizen of either Texas or of the United States, but as a specific type of entity which he describes as "one of the sovereign American People." The complication, however, is illusory.

█ Barcroft seeks monetary damages based on alleged trespass and invasion, theft of property, and conversion, among other things. We do not now review the merits of those claims because they are not before us. However, we must recognize that Barcroft's claims at the very least reflect personal grievances which might ultimately result in a recovery. Thus, the bare minimum necessary to show standing has been achieved and the trial court could not properly dismiss on that basis.

The next question is whether Barcroft has the ability to recover in the capacity in which he filed suit. That is the more difficult question. The trial court adjudged that Barcroft could not recover "in the capacity as a 'sovereign.'"

Barcroft's argument is based on cases and constitutional interpretations that stretch back to a period predating the Civil War. Barcroft has attempted to make use of the legal system, while at the same time contending that legal system, or some portion of it, does not apply to him because he is a "sovereign," or perhaps "one of the sovereign American People" or a "sovereign citizen." Regardless of how described, his basic position is that there is more than one level of citizenship within the United States and that he is of one particular level which has, in some manner, rights that an individual at a different level of citizenship does not.

His argument is based on language found in *Dred Scott v. Sandford*, 60 U.S. 393, 403, 19 How. 393, 15 L.Ed. 691 (1856). In relevant part, that opinion addressed the issue of whether a "negro" who was a slave could become a member of the

political community formed and brought into existence by the Constitution of the United States, and as such become entitled to all the rights, and privileges, and immunities, guarantied [sic] by that instrument to the citizen? One of these rights is the privilege of suing in a court of the United States in the cases specified in the Constitution.

The Court stated that "citizens" and "people of the United States" were synonymous terms, that those people were the "sovereign people," and that every citizen is one of these people and a constituent member of this "sovereignty." The Court then engaged in an extensive historical discussion of prior law and the documents that form the basis of the United States, and acknowledged that "negroes" historically were not considered as citizens—but as property—and therefore the protections of the Constitution could not apply to allow them to exercise the right of a citizen to file suit. The Court had to engage in some rather nimble writing to avoid the apparent fact that members of the "negro race" were nevertheless humans, and contrived its discussion of the citizenship of the people of the nation as a method of avoiding that (even to the 1856 Court) obvious reality.

That is merely the preliminary portion of the *Dred Scott* analysis, which then veered into other areas, including the question of whether, because of Scott's or his family's presence in a United States territory which did not recognize slavery, his status altered sufficiently to permit

him to file suit, and also addressed the constitutionality of the Missouri Compromise law.

Barcroft's claimed status is, at this point in our history, imaginary. With the conclusion of the Civil War and the implementation of the constitutional amendments following the conflict, although at one point the law of the land at least contemplated different classes of inhabitants—although not different classes of citizens—that portion of the *Dred Scott* decision was overrun by events and is no longer any more than a historical footnote in our jurisprudence. There is no dichotomy between different citizens, and there are not two classes of citizens in the United States. The "sovereign" language on which Barcroft relies is part of the Court's analysis determining who may constitute a citizen by reviewing which "classes" of individuals were treated as such at the time of the creation of the Constitution. With the ending of the Civil War and the enactment of legislation and constitutional amendments after that time, such an analysis became unnecessary; the classification distinctions based on race on which Chief Justice Taney relied no longer exist, by constitutional fiat. *See* U.S. CONST. amends. XIII, XIV. We cannot countenance Barcroft's position that he is a "sovereign" of any description, or that he is in any way possessed of constitutional rights that exceed or differ from those of other citizens.

Barcroft also supports his argument with caselaw that states there are two classes of citizens in America. His statement, in one sense, is correct. However, in context, those decisions refer to the fact that citizens of the United States are subject to two governments, federal and state, and that they owe allegiance to both. *See State ex rel. Wettengel v. Zimmerman*, 249 Wis. 237, 24 N.W.2d 504, 506 (1946). These cases do not, however, support his

contention that multiple types of federal citizens exist which enjoy differing levels of status.

We acknowledge that, in one sense of the word, as described by Barcroft in his brief, the authority of the Union derives from the people, and thus they are the true "sovereigns" of the nation. That fact does not, however, support his conclusion that there is a classification of sovereign citizenry that differs from the rank and file citizenry.

■ Barcroft filed suit claiming a capacity to recover under this claimed status. The status does not exist. The question is what effect this may have on his ability to continue with this lawsuit. We have found no cases directly on point and thus must resort to analogous situations. We recognized in *Miller* that "[i]t has long been settled that the 'estate' of a decedent is not a legal entity and may not sue or be sued as such." *Miller v. Estate of Self*, 113 S.W.3d 554, 555 (Tex.App.-Texarkana, 2003, no pet.) (citing *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex.1975)). Similarly, there are a legion of cases addressing situations where businesses and/or individuals who sue in a capacity which they do not have or who are sued in an incorrect capacity may neither pursue a lawsuit nor be found liable in a lawsuit. For example, though a failure to file an assumed name certificate does not render a plaintiff's claim void, it does, like the failure to pay a corporate registration fee, affect such plaintiff's ability to recover in litigation brought in that capacity. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 55 (Tex.2003); *cf. Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884–85 (Tex.2001) (holding corporation's failure to pay registration fee for conducting business in Texas affects its capacity to sue); *Nootsie, Ltd.*, 925 S.W.2d at 661 ("[A] party has

capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.").

Similarly, it is long-settled law that, to impose liability on a party, a plaintiff must sue the party in the capacity from which that plaintiff seeks to recover. Thus, a suit against a person named individually seeks to impose personal liability on the individual being sued, while a suit against the person as an agent of a corporation or other business interest attempts to impose liability against the business.

Yet another variation is found in lawsuits brought against a person in an official capacity where a plaintiff is actually seeking to impose liability against the governmental unit the sued person represents, rather than on the individual specifically named. *Vela v. Rocha,* 52 S.W.3d 398, 403 (Tex.App.-Corpus Christi 2001, no pet.) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). In that scenario, the suit is in actuality one against the governmental unit, which is the legal entity that will be held liable for any judgment rendered against the individual sued in an official capacity. *Graham,* 473 U.S. at 165–66, 105 S.Ct. 3099.

In this case, Barcroft brought his litigation to court in a capacity that does not exist and he seeks to recover based only on that capacity. He was offered and declined the invitation to amend his pleading to correct the defect. We must therefore conclude the trial court did not err by dismissing the lawsuit based on a lack of capacity.

We now turn to the remaining question of whether the trial court erred by not merely dismissing the lawsuit, but by dismissing with prejudice. Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991).

If a pleading defect cannot be cured by amendment, dismissal may be with prejudice. *See, e.g., Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385 (Tex.1991); *Texas–Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 146 (Tex.App.-Texarkana 2000, no pet.). However, a trial court should not dismiss a plaintiff's claims with prejudice if the pleadings state a valid cause of action and the pleading defect could be cured by amendment. *Mecom,* 28 S.W.3d at 146; *Kutch v. Del Mar Coll.,* 831 S.W.2d 506, 508 (Tex.App.-Corpus Christi 1992, no writ); *Atkinson v. Reid,* 625 S.W.2d 64, 66 (Tex.App.-San Antonio 1981, no writ). Under those circumstances, the proper remedy is to dismiss without prejudice. *Kutch,* 831 S.W.2d at 508.

This is one of those situations. Barcroft could have amended his petition to change the capacity in which he brought suit. Thus, the court erred by dismissing with prejudice.

The judgment is reversed in part and reformed to reflect that the case was dismissed without prejudice; otherwise, the judgment is affirmed.