**Affirmed and Memorandum Opinion filed September 27, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00713-CV

**SHANE HAWKINS D/B/A GENESIS II CHURCH OF HEALTH AND HEALING CHAPTER #119, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2016-29921**

## MEMORANDUM OPINION

In this case under the Deceptive Trade Practices Act ("the DTPA"), appellant Shane Hawkins d/b/a Genesis II Church of Health and Healing Chapter #119 appeals the summary judgment and permanent injunction barring him from selling "MMS," which also is variously called "Miracle Mineral Solution," "Master Mineral Solution," or "Miracle Mineral Supplement." MMS is a sodium chlorite product that when used as directed produces chlorine dioxide, a chemical used in

disinfectants and as an industrial bleaching agent. The Food and Drug Administration warns that MMS poses significant health risks to humans when taken at the doses recommended on the product's label.

Hawkins promotes and sells MMS as a "health sacrament" of the Genesis II Church, a "non-religious church" that is open to people that take the sacrament "no matter what beliefs they may have." Hawkins explains on his website that the church teaches only the taking of its health sacraments, which he touts as a cure for 95% of human diseases and conditions, including addiction, cancer, HIV, heart disease, autism, and ebola. No medical research supports these claims. Hawkins holds monthly "seminars," styled as "Genesis II Church Sacraments: The Fundamentals of MMS," in which participants are taught to mix and consume MMS.

The trial court granted the State's motion for traditional summary judgment and permanently enjoined Hawkins and those in active concert or participation with him, and their successors and assigns, from (a) promoting, marketing, selling, offering for sale, advertising, or hosting events of any kind related in any way to MMS, sodium chlorite, or chlorine dioxide; (b) promoting, marketing, selling, offering for sale, advertising, or manufacturing any substance that is offered or intended for use in treating a disease or condition of the human body unless the substance has been legally approved by the Texas Food, Drug & Cosmetic Act;[1] and (c) promoting, marketing, selling, offering for sale, advertising, or manufacturing any substance intended for use in treating a disease or condition of the human body where the substance is adulterated or misbranded as defined in the Texas Food, Drug & Cosmetic Act.

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 431.001–.460 (West 2017).

2

On appeal, Hawkins raises a variety of jurisdictional, legal, factual, and procedural arguments. Finding no merit to these arguments, we affirm the trial court's judgment.

## I. Issues Presented

Hawkins does not list the issues he presents for review, but so far as we can discern, he makes the following arguments:

1. The trial court was required to rule upon Hawkins's jurisdictional challenge before any other action was taken;

2. the trial court lacked jurisdiction over the action;

3. the State was represented at trial by Harris County Attorney Vince Ryan and Assistant County Attorney Rosemarie Donnelly, neither of whom are licensed to practice law in Texas;

4. neither Ryan nor Donnelly has filed a valid oath of office or bond;

5. neither Harris County nor Ryan is authorized to act on behalf of the State of Texas;

6. Hawkins is not doing business as Genesis II Church of Health and Healing Chapter 119, and a church cannot be a "dba";

7. there is no contract between Hawkins, on one hand, and opposing parties and opposing counsel the State of Texas, Harris County, Harris County Attorney Vince Ryan, or Assistant County Attorney Rosemarie Donnelly, on the other hand;

8. no one has the right to prevent a church or its believers from teaching its beliefs and offering its sacraments if the sacraments do not consist of controlled or illegal substances;

3

9. there is no evidence that any one has been injured by Hawkins or by Genesis II Church's teachings; and

10. he is entitled to judgment because the State's brief was due on March 2, 2018, and the State waited until March 5, 2018, to request an extension of time to file its brief.

## II. Jurisdictional Arguments

We begin with Hawkins's jurisdictional arguments. In the absence of subject-matter jurisdiction, a trial court lacks authority to decide the case on the merits. *See Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). The existence of subject-matter jurisdiction is a question of law which we review de novo. *Harris County v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).

Hawkins first argues that the trial court was required to rule on his jurisdictional challenge before ruling on anything else. Although it is not clear when or how Hawkins challenged the trial court's jurisdiction, the record before us demonstrates that the trial court expressly ruled on the matter in the only signed order in the appellate record. In that order, the trial court expressly stated that it has jurisdiction over the case, granted the State's motion for final summary judgment, and issued a permanent injunction against Hawkins. We overrule Hawkins's first issue.

In his argument that the trial court lacked jurisdiction over the action, Hawkins contends that no court can determine for itself whether it has jurisdiction. Hawkins is mistaken, for "[c]ourts always have jurisdiction to determine their own jurisdiction." *Hous. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007).

4

Hawkins also asserts that he is a bishop of Genesis II Church, and that both he and the church are sovereign so that no court has jurisdiction over them. It is well-established, however, that such "sovereignty" arguments are frivolous. *Lewis v. State*, 532 S.W.3d 423, 430–31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (recounting that "sovereign citizens" share a common courtroom strategy of, among other things, "arguing over the proper format and meaning of their names [and] raising nonsensical challenges to subject matter jurisdiction"); *Barcroft v. County of Fannin*, 118 S.W.3d 922, 926 (Tex. App.—Texarkana 2003, pet. denied) (explaining that a person's claim of "[sovereign] status is, at this point in our history, imaginary"); *see also See Ex parte Blakely*, No. 02-17-00393-CR, 2018 WL 1191875, at *2 (Tex. App.—Fort Worth Mar. 8, 2018, pet. ref'd) (mem. op., not designated for publication) ("Appellant argued that he is exempt from the jurisdiction of the trial court because he is a sovereign citizen of the state. The law is well-established that this argument is frivolous.").

Hawkins further contends that the trial court lacked jurisdiction because there is no evidence of damages in excess of $500. *See* TEX. GOV'T CODE ANN. § 24.007(b) (West Supp. 2017) ("A district court has original jurisdiction of a civil matter in which the amount in controversy is more than $500, exclusive of interest."). But, the district court's jurisdiction in this case is not dependent on the amount in controversy because the case was brought under the DTPA. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2017). The DTPA states,

> Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by

temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.

*Id.* § 17.47(a). Acts that are unlawful under the DTPA and that have been alleged in this case include representing that goods or services have characteristics, uses, or benefits that they do not have, and "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *See id.* § 17.46(b)(5), (b)(24). The DTPA expressly authorizes a district or county attorney to institute and prosecute a suit for injunctive relief to restrain such practices. *Id.* § 17.48(b). The district court's jurisdiction over such a suit for injunctive relief is not dependent on allegations or proof that a particular individual has sustained damages. *See id.* § 17.47(a).

Here, the suit was filed on behalf of the State of Texas by Vince Ryan in his capacity as the County Attorney of Harris County, acting through Rosemarie Donnelly, the Assistant County Attorney. As permitted by the statute, the action was brought in the district court of the county where the defendant has done business. *Id.* § 17.47(b). The suit was brought as authorized by the DTPA, and the trial court had subject-matter jurisdiction to adjudicate the claims presented.

We overrule Hawkins's second and ninth arguments.

### III. Opposing Counsel's Authority

In issues three through five, Hawkins challenges opposing counsel's qualifications or authorization to bring this suit.

Hawkins asserts in his third issue that neither Ryan nor Donnelly are licensed to practice law in this state. We may judicially notice whether a person is licensed to practice law in Texas. *Hunnicutt v. State*, 531 S.W.2d 618, 623 (Tex. Crim. App.

6

1976), *overruled on other grounds by Hurley v. State*, 606 S.W.2d 887 (Tex. Crim. App. 1980); *Landale v. Villamil*, 813 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, no pet.).  As their titles indicate and the State Bar of Texas confirms, Harris County Attorney Vince Ryan and Assistant County Attorney Rosemarie Donnelly are attorneys licensed to practice law in this state.[2]  We overrule Hawkins's third issue.

In his fourth issue, Hawkins asserts that neither Ryan nor Donnelly has taken an oath of office or filed a bond.  *See* TEX. CONST. art. XVI, § 1 (requiring oath of office); TEX. GOV'T CODE ANN. § 45.001 (West 2004) (county attorney must execute bond payable to the governor conditioned on attorney's paying over all money received for a county or the state); *id.* § 41.104 (prosecuting attorney may require assistant prosecuting attorneys to execute a bond).  This argument was not raised in the trial court, and thus, there is no evidence in the appellate record to support this contention.  We accordingly overrule Hawkins's sixth argument.  *Cf. Davis v. State*, 227 S.W.3d 766, 768 (Tex. App.—Tyler 2005) (refusing to address argument raised for the first time on appeal that the county attorney had not taken oath of office at the time of appellant's conviction), *aff'd*, 227 S.W.3d 733 (Tex. Crim. App. 2007).

Hawkins asserts in his fifth issue that neither Harris County nor Ryan is authorized to act on behalf of the State of Texas.  The contention that a suit is being prosecuted or defended without authority must be raised by a sworn motion, and the moving party must set it for a hearing.  TEX. R. CIV. P. 12.  Because the record does not show that these requirements were met, we overrule Hawkins's fifth issue.

---

[2] *See Find a Lawyer*, STATE BAR OF TEXAS, https://www.texasbar.com/ (last visited Sept. 25, 2018).

## IV. Hawkins's Capacity

In his sixth issue, Hawkins asserts that he is not doing business as Genesis II Church of Health and Healing Chapter 119. This appears to be a challenge to the capacity in which Hawkins was sued, and such a challenge must be raised in a verified answer. *See* TEX. R. CIV. P. 93. Because Hawkins did not file a verified answer challenging capacity, this argument has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a).

In a related argument, Hawkins contends that a church cannot be a "dba." Hawkins cites no authority for this assertion. Moreover, it is well-established that a person may do business under an assumed name. *See* TEX. R. CIV. P. 28 ("Any . . . individual doing business under an assumed name may sue or be sued in its . . . assumed or common name . . . ."). This is true even if the assumed name includes the word "church." *See, e.g.*, *Bonner v. Austin*, No. 01-09-01059-CV, 2012 WL 3038511, at *1, *4 n.5 (Tex. App.—Houston [1st Dist.] July 14, 2012, no pet.) (per curiam) (mem. op.). (judgment partly for and partly against "Feldon Bonner, II, individually and d/b/a Powerhouse Ministry/Church"); *Johnson v. Direct Lending Grp., Inc.*, No. 05-07-01503-CV, 2010 WL 3749481, at *1 (Tex. App.—Dallas Sept. 28, 2010, no pet.) (per curiam) (mem. op.) (dismissing appeal by "J. Wayne Johnson d/b/a New Community Baptist Church of Dallas County Texas" due to Johnson's bankruptcy); *First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*, 52 S.W.3d 482, 482 (Tex. App.—Dallas 2001, no pet.) (appeal filed by "First Assembly of God, Inc. d/b/a Assembly of God Church"). We overrule Hawkins's sixth issue.

## V. Absence of a Contract

In his seventh issue, Hawkins contends that he has no contract with the State of Texas, Harris County, Ryan, or Donnelly. Elsewhere in his brief, he additionally asserts that there is no contract between himself and Genesis II Church. But, this is

not a contract action, and no one has alleged the existence of a contract between Hawkins and any other person or entity. Because we cannot divine the significance of these assertions and Hawkins has not explained them, his seventh issue presents nothing for our review.

## VI. Availability of Injunctive Relief

Hawkins maintains in his eighth issue that no one has the right to prevent a church or its believers from teaching its beliefs and offering its sacraments so long as the sacraments are not controlled or illegal substances. We construe this as a challenge to the trial court's grant of its final summary judgment and permanent injunction, which prohibits Hawkins from (a) promoting, marketing, selling, offering for sale, advertising, or hosting events of any kind related in any way to MMS, sodium chlorite, or chlorine dioxide; (b) promoting, marketing, selling, offering for sale, advertising, or manufacturing any substance that is offered or intended for use in treating a disease or condition of the human body unless the substance has been legally approved by the Texas Food, Drug & Cosmetic Act; and (c) promoting, marketing, selling, offering for sale, advertising, or manufacturing any substance intended for use in treating a disease or condition of the human body where the substance is adulterated or misbranded as defined in the Texas Food, Drug & Cosmetic Act.

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). We review a summary judgment de novo, construing the evidence in the light most favorable to the non-movant by crediting evidence favorable to the non-movant if a reasonable juror could and disregarding contrary

evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

As previously discussed, the State brought this action in the public interest pursuant to the DTPA. The State alleges that Hawkins has engaged in false, misleading, and deceptive acts and practices by, among other things, representing that MMS has benefits it does not have and by inducing consumers into transactions by failing to disclose the health risks of ingesting MMS as directed and the absence of medical research supporting his claims about MMS's health benefits. The State's summary-judgment motion was supported by evidence that the federal Food & Drug Administration ("the FDA") issued the following "safety alert" concerning MMS on July 30, 2010:

> [The] FDA warned consumers not to consume or use Miracle Mineral Solution, an oral liquid solution also known as "Miracle Mineral Supplement" or "MMS." The product, when used as directed, produces an industrial bleach that can cause serious harm to health. The product instructs consumers to mix the 28 percent sodium chlorite solution with an acid such as citrus juice. This mixture produces chlorine dioxide, a potent bleach used for stripping textiles and industrial water treatment. High oral doses of this bleach, such as those recommended in the labeling, can cause nausea, vomiting, diarrhea, and symptoms of severe dehydration.

In a subsequent "consumer update," the FDA added that one person had a life-threatening reaction after drinking MMS, but that some MMS labels claimed that reactions such as vomiting and diarrhea instead were "evidence MMS is working." The FDA further stated,

> FDA experts say MMS is dangerous, and they're advising consumers to stop using the product immediately.
>
> . . . .
>
> Some distributors claim MMS mixed with citric acid is an antimicrobial, antiviral, and antibacterial liquid that is a remedy for

10

colds, acne, cancer, HIV/AIDS, hepatitis, H1N1 flu, and other conditions. But FDA experts say they aren't aware of any research that shows the product can effectively treat any illnesses.

The State produced evidence that Hawkins is promoting and selling MMS to be ingested as a miracle cure, and he states on his website that "[s]ome people, with little understanding, say MMS is bleach. MMS is not bleach . . . ." According to the evidence that the State obtained from Hawkins's website, Hawkins teaches the administration of the "sacrament" of MMS in his "Minister of Health & Healing Training Course." Hawkins states, "Those who finish this course know how to fix 95% of the diseases of mankind." He represents on his website that those who take the course can legally use the title "Reverend," and after "treating and recording info. for 50 people, you can be awarded a 'Doctor of MMS'" and use the title "Doctor." Hawkins further represents that "Genesis II Church Care of Health" is superior to health insurance, and that MMS's "side effects" of nausea, diarrhea, and flu-like symptoms "are due to 'die off' of pathogens and too many toxins entering the blood too quickly." Hawkins does not disclose that there is no known medical research that MMS is effective in treating any of the diseases he claims. In sum, the State's summary-judgment evidence supports the trial court's rendition of judgment and its issuance of the permanent injunction at issue.

The State's evidence is uncontroverted because Hawkins failed to timely respond to the summary-judgment motion. Except on leave of court, the respondent to a summary-judgment motion must file and serve a response and any evidence seven days before the hearing on the motion. TEX. R. CIV. P. 166a(c). Hawkins filed his summary-judgment response five days before the hearing. Because the record does not show that the response was filed with leave of court or otherwise indicate that the trial court considered it, we similarly do not consider Hawkins's untimely response and evidence. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663

11

(Tex. 1996); *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, No. 14-16-00474-CV, __S.W.3d__, 2018 WL 2436924, at *6 (Tex. App.—Houston [14th Dist.] May 31, 2018, no pet).

Because the State established its right to the relief awarded and Hawkins failed to timely respond with evidence raising a genuine issue of material fact, we overrule Hawkins's eighth issue.

## VII.  Alleged Procedural Default on Appeal

In his final issue, Hawkins contends he is entitled to judgment because the State's appellate brief was due on March 2, 2018, and the State waited until March 5, 2018, to request an extension of time to file it.  Hawkins cites no authority that the State's failure to timely request an extension to file an appellate brief is grounds for reversing an otherwise-correct judgment.  Moreover, the State's request for an extension was not untimely; a party may move to extend the time for filing a brief before or after the brief is due.  *See* TEX. R. APP. P. 38.6(c).  We granted the State's timely motion for an extension of time to file its brief.  Thus, we overrule Hawkins's tenth issue.

## VIII.  Conclusion

Having overruled all of the arguments we have gleaned from Hawkins's brief and that have been preserved for review, we affirm the trial court's judgment.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Jamison, and Brown.

12